IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

LOUIS JON NORRIS,               )
                               )
            Petitioner,         )
                               )
    vs.                         )      No. 1:19-CV-12 SNLJ
                               )
UNITED STATES OF AMERICA,       )
                               )
            Respondent.         )

## MEMORANDUM AND ORDER

This matter is before the Court on a motion under 28 U.S.C. § 2255 to vacate, set aside or correct sentence by Louis Jon Norris, a person in federal custody. On November 29, 2016, Norris pled guilty before this Court to the offense of Felon in Possession of a Firearm (Count I), and Felon in Possession of a Firearm (Count 2). On February 28, 2017, this Court sentenced Norris to the Bureau of Prisons for a term of 120 months on Count I, and 115 months on Count II, to run consecutive for an aggregate term of 235 months imprisonment. Norris' § 2255 motion is fully briefed and ripe for disposition.

## I. FACTS

### A. INDICTMENT

On July 21, 2016, Louis J. Norris (Norris) was charged by Indictment in the Eastern District of Missouri for two counts of being a convicted felon in possession

of a firearm in violation of Title 18, United States Code, Section 922(g)(1). (DCD 1)

## B. PLEA AGREEMENT AND GUILTY PLEA

On November 29, 2016, Norris executed a plea agreement, pursuant to which he pled guilty to both counts in the Indictment, which charged him with two separate incidents of being a convicted felon in possession of different firearms. (PSR, ¶ 1, DCD 1, 33)1

On November 29, 2016, Norris appeared with his attorney and pled guilty to Counts I and II of the Indictment. In his plea agreement, Norris acknowledged, "having voluntarily entered into both the plea agreement and guilty plea," and that "[he], is in fact, guilty." (Plea Ag. p. 13) Under the Plea Agreement, Norris acknowledged that his base offense level would be "found in Section 2K2.1 and depends on the nature of the firearms, the defendant's criminal history and other factors therein."(Plea Ag. p. 7) Norris also agreed that, pursuant to the United States Sentencing Guidelines (U.S.S.G.), two Specific Offense Characteristics applied:

---

1 References to motions and rulings shall be to the district court docket number for such motion, such as (DCD_____, p. __ ), references to the Plea Stipulation (DCD 33) shall be as (Plea Ag., p.____); references to the Presentence Report (DCD 41) shall be as (PSR, ¶____); references to the Change of Plea Hearing transcript (DCD 61) shall be as (Plea Tr., p.____); and references to the Sentencing Transcript (DCD 63) shall be as (S. Tr., p. ).

**2** levels should be added pursuant to Section 2K2.1(b)(4), because a
firearm defendant possessed was stolen; [and] (b) **4** levels should be
added pursuant to Section 2K2.1(b)(6)(B), because defendant used or
possessed a firearm in connection with another felony offense.

(Plea Ag., p. 7)

Relative to Chapter 3 Adjustments, Norris agreed that **"6** levels should be

added because, in a manner creating a substantial risk of serious bodily injury, the

defendant knowingly assaulted a law enforcement officer during the course of the

offense."   (Plea Ag., p. 7).   It was also agreed that Norris should receive three

levels for acceptance of responsibility pursuant to Section 3E1.1 (a) and (b), since

his offense level prior to Chapter 3 adjustments was 16 or higher.   (*Id.* at p. 8)

The Plea Agreement noted that "[t]he defendant has been fully apprised by

defense counsel of [his] rights concerning appeal and fully understands the right to

appeal the sentence under Title 18 U.S.C. § 3742."   (Plea Ag. p. 9)   The parties

waived all rights to appeal non-jurisdictional, non-sentencing issues, including any

issues related to pretrial motions, discovery and the guilty plea.   (Plea Ag. p. 9,

Plea Tr. pp. 10-11)

During his change of plea hearing, when asked if he was satisfied with the

way his lawyer had handled his case, Norris replied "Yes."   (Plea Tr. 7)   Norris

acknowledged to the Court that his lawyer had investigated the case to his

satisfaction.   When asked if Mr. Skrien had done everything he had asked him to

do, Norris responded, "Yes, sir."   (Plea Tr. 7-8)   When asked if he had any

"gripes or complaints whatsoever," Norris responded, "No, I don't have any."

(Plea Tr. 8)   In the Plea Agreement, Norris represented that he was satisfied with

the representation he had received from his lawyer.

> The defendant is fully satisfied with the representation received from defense counsel.   The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel.   Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

(Plea Ag. 13)

Norris also indicated that he had read the Plea Agreement, had gone over it

in detail with his attorney, that his attorney had explained the contents of the

agreement in detail to him, and that he understood the agreement.   (Plea Tr. 9-10)

When asked if there was anything in the agreement that he did not understand,

Norris replied "No."   (Plea Tr. 10)   The court asked Norris "Have any promises

been made by anyone to get you to plead guilty other than the promises set out in

this agreement?"   (Plea Tr. 10) Norris replied, "No, sir. No."   Relative to the

application of the sentencing guidelines to his case, Norris acknowledged during

the plea hearing that Mr. Skrien had explained the sentencing guidelines to him.

(Plea Tr. 11)

In the Plea Agreement, Norris also agreed "to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel." (Plea Ag. 9-10)

## C. THE PRESENTENCE REPORT

The United States Probation Office prepared a Presentence Investigation Report (PSR). As indicated in the Offense Conduct section of the PSR, paragraphs 12-17, on April 11, 2016, in Shannon County, Missouri, Norris, a convicted felon, separately possessed two different firearms. First, an Arsenal, Bulgaria, PM (Makarov) 9 x 18 caliber semi-automatic pistol as charged in Count I, then a Glock 22, .40 S & W caliber semi-automatic pistol as charged in Count II.

### Offense Conduct

On April 11, 2016, Shannon County, Missouri Sheriff's Deputy Vance was serving papers on County Road 670. While driving, Deputy Vance observed a white, sport utility vehicle (SUV) driving in the opposite direction and stopped the vehicle in an attempt to locate a residence. When the driver of the SUV stopped beside Deputy Vance's patrol vehicle, he observed the driver to be Norris. He had prior knowledge that Norris did not possess a valid driver's license and directed Norris to exit his vehicle. When Norris got out of his vehicle, Deputy Vance observed Norris place an unknown object into his right boot. Norris denied

possessing a firearm, and gave Deputy Vance permission to search his vehicle. Norris told Deputy Vance to not get too close or his pit bull dog might bite. After Deputy Vance asked Norris if there was a firearm in the car, Norris replied that there was a pistol under the driver's seat of his vehicle. (PSR, ¶ 13)

As Deputy Vance was placing Norris under arrest, a vehicle drove by. When Deputy Vance looked at the vehicle, Norris struck him in the left side of the head with Norris' right fist several times. Deputy Vance was able to take Norris to the ground, striking him several times. As Norris and Deputy Vance fought, Norris removed a firearm out of his right boot. Deputy Vance knocked the pistol from Norris' hand and into the road. A witness in the passing vehicle stopped to assist Deputy Vance. (PSR, ¶ 13)

The witness, Danielle Lind, exited the vehicle and asked, "What do I do?" Deputy Vance told Lind to get the gun. Deputy Vance then placed Norris into a headlock. Norris picked up an unknown object and hit Deputy Vance in the head with it.  Norris was able to break Deputy Vance's hold and place him in a headlock. He struck Deputy Vance several times in the back of the head with his fist. (Plea Ag., p. 4) While Norris was on top of Deputy Vance, he grabbed the deputy's duty pistol from his hip. Norris pulled on the pistol trying to get it out of the holster. Norris then put the holstered pistol in Deputy Vance's face and said, "stop or I'm

going to shoot." (PSR, ¶ 13; Plea Ag., p. 4)

Deputy Vance knocked the pistol from Norris' hands and into the ditch. Norris again placed Deputy Vance in a headlock. Norris and Deputy Vance continued to struggle. Norris was able to break free and began moving toward Lind stating "give me my gun back;" however, Deputy Vance positioned himself between Norris and Lind, and pushed him, stating "get back" several times. (Plea Ag., p. 4) Lind gave Deputy Vance Norris' firearm and stated that she had unloaded it. Norris attempted to retrieve his firearm from Deputy Vance, but he threw the firearm into his patrol vehicle while pushing Norris back. As Deputy Vance was attempting to get another weapon from his patrol vehicle, Norris ran to his vehicle and fled the area. (PSR, ¶ 13; Plea Ag., p. 4)

Deputy Vance called over the radio that he had been assaulted by "LJ" Norris on County Road 670 near T Highway, and Norris had fled eastbound from his location in a white Ford Explorer. Deputy Richard O'Dell arrived at the scene, but Deputy Vance had already left via ambulance. Deputy O'Dell met with Lind, who stated she saw the entire incident and provided a written statement. Lind indicated that when Norris pointed the gun at Deputy Vance, he had his finger behind the trigger and was unable to fire the gun. Lind further stated that she was sure she was going to see the man kill the deputy. Lind provided Deputy O'Dell with the

firearm she recovered during the fight, which was identified as a Makarov 9mm. (Plea Ag., pp. 4-5)

Deputy O'Dell examined the area where the fight occurred and located pieces of Deputy Vance's uniform. He located Deputy Vance's firearm across the ditch in the fence row. Deputy Vance was transported from the scene to Mountain View Hospital, and was released later that evening. He was diagnosed with a closed head injury, contusion of face, and a foreign body in soft tissue. (Plea Ag., p. 5; PSR, ¶ 14)

On April 12, 2016, officers received notice that Norris' vehicle was found on County Road 675. The owner of the vehicle indicated that Norris was in the process of buying the vehicle from him. A female was apprehended who advised Norris was in the vehicle; however, he fled the area when he saw officers. Officers seized the woman's cell phone and read text messages between her and Norris. Through an exchange of text messages between Norris and officers, Norris agreed to surrender to law enforcement, and he did so on April 17, 2016.   (PSR, ¶ 15)

**Total Offense Level**

The recommended base offense level for Norris' offense was 24.   (PSR, ¶ 25)   Two levels were added because Norris stole the deputy's firearm during the assault.   (PSR, ¶ 26)   Since Norris used a firearm in connection with another

felony offense, the assault of a law enforcement officer, his offense level was increased by four levels. (PSR, ¶ 27) As Norris assaulted someone he knew to be a law enforcement officer during the commission of the offense, and acted in a manner that created a substantial risk of serious bodily injury to the officer, his offense level was increased by six levels.(PSR, ¶ 28) His adjusted offense level was 36. (PSR, ¶ 31) After a three level reduction for acceptance of responsibility, Norris' total offense level was 33. (PSR, ¶ 35)

**Criminal History**

Norris had several criminal convictions identified in his PSR. A number of misdemeanor alcohol, drug, and driving offenses he committed in the 1990s did not count for criminal history points, including three driving while intoxicated convictions and two convictions for driving while revoked. (PSR, ¶¶ 38-46) On July 18, 2000, Norris was convicted of the misdemeanor of assault in the third degree in the Circuit Court of Shannon County, Missouri, for which he was sentenced to ten days in jail, but execution of that sentence was suspended and he was placed on two years unsupervised probation. (PSR, ¶ 45)

Norris was subsequently convicted of other assaults. On May 23, 2002, Norris was convicted of the misdemeanor of assault in the third degree in the Circuit Court of Shannon County, Missouri, for which he was sentenced to one

year in in jail, but execution of that sentence was suspended and he was placed on two years unsupervised probation.   On February 24, 2004, Norris' probation was revoked and he was sentenced to six months in jail.   (PSR, ¶ 48)   On January 22, 2007, Norris was convicted of the Class C felony of Domestic Assault in the Second Degree in the Circuit Court of Shannon County, Missouri, for which he was sentenced to three years in prison.   (PSR, ¶ 51)   On November 25, 2013, Norris was convicted of an apparent misdemeanor of assault in the Circuit Court of Shannon County, Missouri, for which he was sentenced to ten days in jail.   (PSR, ¶ 57)

Among other convictions, on February 23, 2005, Norris was convicted of Attempt to Manufacture a Controlled Substance in the Circuit Court of Shannon County, Missouri, for which he was sentenced to seven years in prison.   After being paroled, Norris committed several violations of his parole.   His parole was revoked twice.   (PSR, ¶ 49)

Norris had a criminal history score of ten, which established a criminal history category of V.   (PSR, ¶ 61)   Based on a total offense level of 33, and a criminal history category of V, Norris' guideline imprisonment range was 210 months to 262 months.   (PSR, ¶ 95)   At the sentencing hearing, Norris' criminal history category was later revised to IV, and his guideline range was

determined to be 188-235 months.    (S. Tr., pp. 4-5)

### Pending Charges

At the time of sentencing, Norris had pending, unrelated charges in the Circuit Court of Howell County, Missouri, of felonious restraint, two separate offenses of resisting arrest, two counts of felony possession of a controlled substance, burglary in second degree, and felony stealing over $500.00.    (PSR, ¶¶ 63-65)    For the first referenced resisting arrest charge, on August 15, 2014, officers from the Birch Tree, Missouri Police Department were responding to a complaint that Norris had committed an assault with a firearm when they observed Norris operating a motor vehicle, and attempted to conduct a stop.    Norris led the officers on a high-speed pursuit of over one hundred miles per hour.    (PSR, ¶ 63)

In a separate incident, on July 9, 2015, when a Birch Tree officer attempted to stop a vehicle Norris was operating and arrest him on an outstanding felony warrant, Norris again fled and accelerated to a high rate of speed.    Eventually, Norris was apprehended after he ran off the road.    (PSR, ¶ 65)    The two resisting arrest offenses involved the same Birch Tree police officer.    (S. Tr., p. 10)

### Sentencing Hearing

A sentencing hearing was held before this Court on February 28, 2016. Prior to the sentencing hearing, Norris' counsel filed an Objection to Presentence

Investigation Report, objecting to the statutory maximum punishment being twenty years instead of ten years, contesting Norris being sentenced based on his separate, successive, and distinct possession of two different firearms; to his criminal history category being V instead of IV; and to inclusion of a two-level enhancement because one of the firearms was stolen. (DCD 38)    The Government filed an Amended Sentencing Memorandum addressing and contesting those objections. (DCD 49)    At sentencing, the Government conceded the objection relative to criminal history category, agreeing that it should be IV instead of V.  Norris withdrew his objection to the statutory cumulative maximum punishment of twenty years based on both counts, and to the two-level enhancement for possession of a stolen firearm.   (S. Tr. pp. 4-5)

At sentencing, this Court informed the parties that it had read the Government's amended sentencing memorandum, the sentencing memorandum submitted by defense counsel, the letters submitted on Norris' behalf and the letter Norris wrote to the Court.  This Court indicated that he had "read all that very closely," and that he would take them into consideration.    (S. Tr., p. 6)

This Court asked for the Government's recommendation.  The Government referenced Mr. Norris being responsible for a horrific, potentially very dangerous, if not deadly, set of circumstances, and recommended a within

guideline sentence of 200 months.   (S.Tr., pp. 7-8)   This Court informed the

parties that it had "read closely" Norris' Sentencing Memorandum and would

take "all that into consideration."   (S.Tr., p. 5)   Norris' counsel recommended a

sentence near the "statutory maximum for one count – 10 years, 11 years, 12

years."   (S.Tr., p. 11)

This Court then addressed sentencing Norris and explained its

reasoning for imposing a sentence of 235 months imprisonment.

> Pursuant to the Sentencing Reform Act of 1984 and the provisions of Title 18 United States Code Section 3553(a) and all the factors thereunder and also in view of the sentencing objectives of just punishment, general deterrence and incapacitation and also in view of one thing that concerns me greatly, which is the criminal history of assaultive behavior, and I'll just go through that briefly.

> There was a misdemeanor assault conviction back in 1999. Another misdemeanor assault conviction in 2001. A domestic assault felony conviction for which Defendant was sentenced to three years in prison at age 28. Another misdemeanor assault conviction, Shannon County at age 36. And now the current offense, which is yet another very serious assaultive conviction in which an arresting officer was the victim for that particular concern about repeated assaultive behavior.

> I'm simply unwilling to give you the kind of lenient treatment that your lawyer has asked for. So, therefore, you Louis Jon Norris is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 235 months. That consists of a term of 120 months on Count I and 115 months on Count II, which will be served consecutively and not concurrently.

> The sentence shall run concurrently with any sentence imposed in the Circuit Court of Howell County, Missouri under Docket No. 16AN-CR-00143-01 and 16AN-CR-00145-01, but consecutively to

any other sentences from any other case in Howell County, Missouri or any other court or jurisdiction.

(S.Tr., pp. 22-24)

After sentence was pronounced, Norris' counsel objected to the district court imposing Norris' sentence consecutive "to certain unresolved pending State cases we object to the Court not considering them related, because the police officer involved was related." (S.Tr. 27)

Mr. Norris' counsel expressed that the sentence was "unreasonable to the extent that it is based on what might have happened and not what actually did happen since no one was permanently or seriously injured in this incident" or as a result of the prior misdemeanor convictions referenced by this Court. (S.Tr., p. 27) Norris also complained that this Court "gave undue weight to some factors under 3553 and not enough weight with respect to Mr. Norris' unfortunate childhood, which was noted in the variance section of the presentence investigation report." *Id*.

This Court refuted those complaints by stating that he had "considered all those factors. I read everything very closely, and I took all that into consideration." He then emphasized that he was concerned about the circumstances of the offense and Norris' "prior assaultive behavior and the fact that we're dealing with a law enforcement officer. And, frankly, it's fortunate that nobody was seriously injured in this incident." (S.Tr., p. 28)

## D. DIRECT APPEAL

Norris timely filed a direct appeal.   In his brief, citing 18 U.S.C. § 3553(c)(1), Norris complained that this Court "committed procedural error by failing to adequately explain the chosen sentence within a guideline range that exceeded 24 months."   (Norris Br., p. 10)   Norris also complained that this Court imposed a substantively unreasonable sentence "because the district court failed to consider all factors required under the sentencing statute, failed to consider facts that should have gotten significant weight, and gave other factors more weight than was proper."   (Norris Br., p. 8 )   In an unpublished opinion, on February 2, 2018, the Eighth Circuit considered and rejected Norris' claims of error, and affirmed this Court's top of the Guidelines sentence of 235 months. *United States v. Norris*, 710 Fed. Appx. 282 (8th Cir. 2018) (per curiam) (unpublished).

## E. MOTION FOR POST-CONVICTION RELIEF PURSUANT TO 28 U.S.C. §2255.

On January 28, 2019, Norris timely filed a Motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, alleging several and various claims of error, including some claims that he was denied effective assistance of counsel.

1. In Ground One, alleged in ¶ 12(a), Norris alleges the written statement of reasons which stated that the sentence "is sufficient to address sentencing objectives of just punishment, general deterrence, and incapacitation," was insufficient. (2255 Motion p. 2)

2. In Ground Two, alleged in ¶ 12(b), Norris alleges that "[t]he 235 month sentence is substantively unreasonable because the judge kept making references to past assaults that had past the time restrictions set in place for the court, therefore giving significant weight to an improper or irrelevant factor. Past assaults were over 15 years old." (sic) (2255 Motion p. 2)

3. In Ground Three, alleged in ¶ 12(c), Norris alleges his "mental health history and childhood abuse was failed to of been used but was brought up by the judge, in so the district court abused its discretion in failing to consider relevant factors that should have received significant weight. (sic) (2255 Motion p. 2)

4. In Ground Four, alleged in ¶ 12(d), Norris alleges that he was denied effective assistance of counsel.   Norris states that he "realizes the limited claims to this clause but states that the top of the 235 month uncontested guideline was not discussed with his personal counsel, but was promised

by his counsel that he would not receive over 10 years for the charges. His counsel, Michael Skrine, on the day of this guilty plea, told this to the defendant." (sic) (2255 Motion p. 3)

5. In Ground Five, alleged in ¶ 12(e), Norris alleges that after his personal counsel walked him through his guilty plea two weeks before sentencing, he "got a visit from Scott Tilsen, the Assistant Federal Public Defender, telling Norris that Michael Skrine had health issues and that Scott would be sitting in for him. So all previous promises from previous lawyer on day of plea went unanswered, therefore resulting in a 235 month sentence instead of the "not over 10 year sentence" Michael Skrine had told [Norris] he would receive." (sic) Norris claims that has he been aware of the 235 month uncontested open plea, he "would not of plead guilty." (2255 Motion p. 3)

6. In Ground Six, alleged in ¶ 12(f), Norris alleges that "Public defender Scott Tilsen only had two weeks to prepare for the sentencing hearing which is not an effective amount of time for counsel to prepare and get all the facts ready in order to fight for defendant." (2255 Motion p. 3)

7. In Ground Seven, alleged in ¶ 12(g), Norris alleges that he "was convicted based on the Base Offense Level because [Norris] was

convicted of 2nd Degree Domestic Assault, and Attempt to Manufacture a

Controlled Substance but [Norris] argues that the Domestic Assault 2nd

degree is not a violent crime."   (sic) (2255 Motion p. 3)

8. In Ground Eight, alleged in ¶ 12(h), Norris alleges that his "conviction

was obtained by a violation of the protection against double jeopardy

when his rights under the Constitution was violated by being punished

twice for the same offense because in [Norris'] case, [he] was prosecuted

for being in possession of two firearms separately but when in fact

[Norris claims he] was in possession of both firearms at the same time.

(sic) (2255 Motion p. 3)

9. In Ground Nine, alleged in ¶ 12(i), Norris alleges that he "was never in

possession of said second stolen firearm because the cop's firearm was

struggled over and released from the cop[']s hands into the ditch where it

stayed until it was found according to reports. Which is in direct

opposition to cop[']s first report, original report stating that [Norris] fled

the scene with the firearm. After another officer, O'dell came to scene

and found the firearm in ditch officer Vance changed his statement which

in weighing the evidence of this case the court once again abused its

discretion by failing to consider a relevant factor that should of received

significant weight and could of resulted in only one charge of felony possession of firearm."   (sic) (2255 Motion p. 4)

10.  In Ground Ten, alleged in ¶ 12(j), Norris alleges that the "235 months sentence was both procedurally and substantively unreasonable. The sentence was procedurally unreasonable because the district court failed to adequately explain the near statutory maximum sentence in light of the requirements of 18 U.S.C. § 3553 (c)(1) for cases where the guideline range exceeded 24 months. The sentence was substantially unreasonable because the district court failed to consider all the factors required under the sentencing statue, failed to consider facts that should have gotten significant weight, and gave other factors more weight than was proper. (sic) (2255 Motion p. 3)

## II. APPLICABLE LAW

### A. NEED FOR EVIDENTIARY HEARING AND BURDEN OF PROOF.

28 U.S.C. § 2255 provides in pertinent part:

> Unless the motion and the files and records of the case conclusively show that the prisoner is not entitled to relief, the court shall . . . grant a prompt hearing thereon.

Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Court states:

The motion, together with all the files, records, transcripts, and correspondence relating to the judgment under attack, shall be examined promptly by the judge to whom it is assigned.   If it plainly appears from the face of the motion and any annexed exhibits in the prior proceedings in the case that the Petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the Petitioner to be notified.

When a petition is brought under Section 2255, the petitioner bears the burden of establishing the need for an evidentiary hearing.   Section 2255 provides a remedy for jurisdictional and constitutional errors.   A defendant may seek relief on grounds that the sentence was imposed in violation of the Constitution or laws of the United States, the court lacked jurisdiction to impose a sentence, the sentence exceeded the maximum authorized by law, or the sentence is otherwise subject to collateral attack.   *Sun Bear v. United States,* 644 F.3d 700, 704 (8th Cir. 2011), citing 28 U.S.C.A. § 2255(a).

In determining whether petitioner is entitled to an evidentiary hearing, the court must consider "[a] petitioner's allegations … as true and a hearing should be held unless they are contradicted by the record, inherently incredible, merely conclusions, or would not entitle the petitioner to relief."   *Garcia v. United States*, 679 F.3d 1013, 1014 (8th Cir. 2012), citing *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir.1995).   "[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently

results in a complete miscarriage of justice.'" *United States v. Addonizio,* 442 U.S. 178, 185, 99 S.Ct. 2235, 2240 (1979), quoting *Hill v. United States*, <u>368 U.S. 424, 428</u>, <u>82 S.Ct. 468, 471</u> (1962). The court need not give weight to "conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets." *United States v. McGill,* <u>11 F.3d 223, 225</u> (1st Cir. 1993)

"No hearing is required when the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Watson v. United States*, <u>493 F.3d 960, 963</u> (8th Cir. 2007), quoting *Shaw v. United States,* 24 F.3d 1040, 1043 (8th Cir.1994). *See also United States v. Robinson*, <u>64 F.3d 403, 405</u> (8th Cir. 1995); *Engelen v. United States*, <u>68 F.3d 238, 240</u> (8th Cir. 1995) (2255 "petition can be dismissed without a hearing if . . . the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact").

## B. EFFECT OF GUILTY PLEA ON APPEALABLE ISSUES.

A defendant who enters a plea of guilty thereby waives his right to request relief under <u>28 U.S.C. § 2255</u> with the exception of those issues related to jurisdiction. "A valid guilty plea, however, 'operates as a waiver of all non-jurisdictional defects or errors.'" *United States v. Staples*, <u>435 F.3d 860, 864</u> (8th Cir. 2006), quoting *United States v. Vaughan*, <u>13 F.3d 1186, 1188</u> (8th Cir.1994).

When the Petitioner delivers a guilty plea, the focus of a collateral attack

must remain "limited to the nature of counsel's advice and the voluntariness of the plea." *Bass v. United States*, <u>739 F.2d 405, 406</u> (8th Cir. 1984), quoting *Tollett v. Henderson*, <u>411 U.S. 258, 266</u>, <u>93 S.Ct. 1602, 1608</u> (1973). "[A] guilty plea operates as a break in the chain of events . . . of the criminal process… [a criminal defendant] may not thereafter raise independent claims relating to deprivation of constitutional rights that" antedated the plea. *Tollett,* <u>411 U.S. at 267</u>. Only the voluntary and intelligent character of the guilty plea may be attacked. *Id.*

Although the *Tollett* decision concerned state prisoner habeas corpus petitions, the Eighth Circuit has applied it to motions under Section 2255. *Bass*, <u>739 F.2d at 406</u>.

"The binding nature of the plea thus depends on the fact that it is made 'voluntarily after proper advice' and with an understanding of the consequences." *United States v. Frook,* <u>616 F.3d 773, 775</u> (8th Cir. 2010). Even a defendant's reliance on his counsel's opinion as to the calculation of defendant's sentence would not make a defendant's plea involuntary, where the record reveals that the defendant was fully informed and knowingly and voluntarily pleaded guilty. *See Hollis v. United States*, <u>687 F.2d 257, 260</u> (8th Cir. 1982).

## C. CLAIMS ALLEGING INEFFECTIVE ASSISTANCE OF COUNSEL.

To prevail on a claim alleging ineffective assistance of counsel, the

Petitioner must satisfy the two-part test of *Strickland v. Washington*, <u>466 U.S. 668,</u> <u>104 S.Ct. 2052</u> (1984). Under *Strickland*, the Petitioner must first show that the counsel's performance was deficient. *Id.* at 687. This requires the Petitioner to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. Second, the Petitioner must demonstrate that the deficient performance prejudiced the defense so as "to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. The Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

The Eighth Circuit has described the two-fold test as follows: (1) "counsel's representation fell below an objective standard of reasonableness;" and (2) "but for this ineffective assistance, there is a reasonable probability that the outcome of the trial would have been different." *Rogers v. United States,* <u>1 F.3d 697, 700</u> (8th Cir. 1993*) (*quotations omitted). The Eighth Circuit has also described the *Strickland* test as follows: "whether counsel's performance was in fact deficient and, if so, whether the defendant was prejudiced by the inadequate representation. If we can answer 'no' to either question, then we need not address the other part of

the test." *Fields v. United States*, <u>201 F.3d 1025, 1027</u> (8th Cir. 2000).

When evaluating counsel's performance, the "court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, <u>466 U.S. at 689</u>.  Counsel's performance is considered objectively, and gauged "whether it was reasonable 'under prevailing professional norms' and 'considering all the circumstances.'"  *Fields*, <u>201 F.3d at 1027</u>, quoting *Strickland*, <u>466 U.S. at 688</u>.  A reviewing court's "scrutiny of counsel's performance must be highly deferential."  *Strickland*, <u>466 U.S. at 689</u>. "'When assessing attorney performance, courts should avoid the distorting effects of hindsight and try to evaluate counsel's conduct by looking at the circumstances as they must have appeared to counsel at the time.'"  *Rodela-Aguilar v. United States,* <u>596 F.3d 457, 461</u> (8th Cir. 2010), quoting *United States v. Staples,* <u>410 F.3d 484, 488</u> (8th Cir. 2005).

## D.  WAIVER OF APPELLATE RIGHTS AND RIGHT TO POST-CONVICTION RELIEF PURSUANT TO <u>28 U.S.C. § 2255</u>.

A defendant may waive the right to seek collateral relief under § 2255, and "[s]uch a waiver is enforceable when the claim raised falls within the scope of the waiver, the defendant knowingly and voluntarily entered into the plea agreement and waiver, and enforcement of the waiver would not result in a miscarriage of justice."  *Ackerland v. United States,* <u>633 F.3d 698, 701</u> (8th Cir. 2011).   The

Eighth Circuit has "enforced a defendant's plea agreement promise to 'waive his right to appeal, or challenge via post-conviction writs of habeas corpus . . . the district court's entry of judgment and imposition of sentence.'" *DeRoo v. United States,* 223 F.3d 919, 923 (8th Cir. 2000), quoting *United States v. His Law*, 85 F.3d 379 (8th Cir. 1996).

Negotiated waivers of appellate rights and rights to pursue post-conviction relief have been upheld by the Eighth Circuit. *See United States v. Andis,* 333 F.3d 886, 889 (8th Cir. 2003); *His Law*, 85 F.3d at 379. The Eighth Circuit has determined, "[a]s a general rule, we see no reason to distinguish the enforceability of a waiver of direct-appeal rights from a waiver of collateral-attack rights in the plea agreement context." *DeRoo*, 223 F.3d at 923. When a defendant waives his appeal and post-conviction relief rights in a plea agreement, the waiver will be enforced if it was knowingly and voluntarily made. *Id.*

"A defendant's plea agreement waiver of the right to seek § 2255 post-conviction relief does not waive defendant's right to argue, pursuant to that section, that the decision to enter into the plea was not knowing and voluntary because it was the result of ineffective assistance of counsel. *Id.* at 924.

The Eighth Circuit has determined that a waiver of a right to appeal is enforceable if "the appeal falls within the scope of the waiver and that both the

waiver and plea agreement were entered into knowingly and voluntarily." *Andis,*
333 F.3d at 889-90. The court may still refuse to enforce a waiver of appeal "if to
do so would result in a miscarriage of justice." *Id*. at 890. However, plea
agreements "should not be easily voided by the courts," and this narrow exception
"will not be allowed to swallow the general rule that waivers of appellate rights are
valid." *Id*. at 891.

## E. ALLEGATIONS OF ERROR IN APPLYING GUIDELINES NOT COGNIZABLE IN PROCEEDINGS FOR POST-CONVICTION RELIEF UNDER § 2255

"The general rule is that § 2255 was intended to afford federal prisoners a
remedy identical in scope to federal habeas corpus." *Davis v. United States,* 417
U.S. 333, 343, 94 S.Ct. 2298, 2304 (1974). Like habeas corpus, this remedy
"does not encompass all claimed errors in conviction and sentencing." *United
States v. Addonizio,* 442 U.S. 178, 185, 99 S.Ct. 2235, 2240 (1979). It provides a
remedy for jurisdictional and constitutional errors, neither of which is at issue here.
Norris claims merely an error in the application of a Sentencing Guideline to his
case. His claim does not involve the legal range of punishment or a violation of
his Constitutional rights. Beyond that, the permissible scope of a § 2255
collateral attack on a final conviction or sentence is severely limited; "an error of
law does not provide a basis for collateral attack unless the claimed error

constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Id.,* quoting *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471 (1962).

These principles are reflected in the text of § 2255, which the Supreme Court described as "somewhat lacking in precision" in *Davis,* 417 U.S. at 343, 94 S.Ct. 2298, 2304.    A § 2255 motion may be filed by a federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." § 2255(a). The court shall grant appropriate relief if it finds "that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the Constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." § 2255(b).

Applying these principles, the 8th Circuit has consistently held "that ordinary questions of guideline interpretation falling short of the 'miscarriage of justice' standard do not present a proper § 2255 claim."    *Auman v. United States,* 67 F.3d 157, 161 (8th Cir. 1995); *accord United States v. Pregent,* 190 F.3d 279,

284 (4th Cir. 1999); *United States v. Williamson,* 183 F.3d 458, 462 (5th Cir. 1999); *Graziano v. United States,* 83 F.3d 587, 590 (2d Cir. 1996). Therefore, such questions "may not be re-litigated under § 2255." *United States v. McGee,* 201 **F.**3d 1022, 1023 (8th Cir. 2000). *See also Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011).

## III. DISCUSSION

### A. NORRIS WAIVED HIS RIGHT TO FILE A MOTION COLLATERALLY ATTACKING HIS SENTENCE FOR ALLEGED ERROR IN THE APPLICATION OF THE SENTENCING GUIDELINES

In the Plea Agreement, Norris agreed "to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to 28 U.S.C. § 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel." (Plea Ag., Doc. 33, pp. 9-10). For his claims set for in Ground One (Insufficient Statement of Reasons), Ground Two (Substantively Unreasonable Sentence), Ground Three (Failing to Consider Relevant Factors), Ground Seven (Domestic Assault Not a Crime of Violence), Ground Nine (Did Not Possess Deputy's Firearm), and Ground Ten (Sentence was Procedurally and Substantively Unreasonable), Norris waived his right to pursue a claim for post-conviction relief on those grounds since his claim does not involve an allegation of ineffective assistance of counsel or prosecutorial misconduct. His waiver

precludes him from pursuing those claims for post-conviction relief.   As reflected in the plea agreement and transcript of guilty plea proceedings, Norris' execution of the waiver of post-conviction claims was done knowingly and voluntarily. Norris' waiver of his right to file a motion for post-conviction relief, including his right to collaterally attack his conviction pursuant to 28 U.S.C. § 2255, will be enforced against him because "the appeal falls within the scope of the waiver and that both the waiver and plea agreement were entered into knowingly and voluntarily." *Andis,* 333 F.3d at 889-90.  Accordingly, Norris' claim of error in the application of the sentencing guidelines in Grounds 1, 2, 3, 7, 9 and 10, will be dismissed without an evidentiary hearing.

## B.  ALLEGATIONS OF ERROR IN APPLYING GUIDELINES NOT COGNIZABLE IN PROCEEDINGS FOR POST-CONVICTION RELIEF UNDER § 2255

In addition to waiving his claims for guideline errors, those claims are not cognizable in a proceeding for post-conviction relief as claimed by Norris' in § 2255 Petition.   For his claims of guideline errors as set forth in Ground One (Insufficient Statement of Reasons), Ground Two (Substantively Unreasonable Sentence), Ground Three (Failing to Consider Relevant Factors), Ground Seven (Domestic Assault Not a Crime of Violence), Ground Nine (Did Not Possess Deputy's Firearm), and Ground Ten (Sentence was Procedurally and Substantively Unreasonable), Norris cannot assert them in a § 2255 Petition, and they are not

cognizable in a § 2255 petition.   The Eighth Circuit has discussed this issue in detail:

> Section 2255 "was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." (citation omitted) Like habeas corpus, this remedy "does not encompass all claimed errors in conviction and sentencing." (citation omitted) It provides a remedy for jurisdictional and constitutional errors, neither of which is at issue here. Beyond that, the permissible scope of a § 2255 collateral attack on a final conviction or sentence is severely limited; "an error of law does not provide a basis for collateral attack unless the claimed error constituted a 'fundamental defect which inherently results in a complete miscarriage of justice.'" (citations omitted) . . . Applying these principles, this court and our sister circuits have consistently held "that ordinary questions of guideline interpretation falling short of the miscarriage of justice' standard do not present a proper section 2255 claim. (citations omitted) Therefore, such questions "may not be re-litigated under § 2255." (citation omitted)

*Sun Bear v. United States*, <u>644 F.3d 700, 704</u> (8th Cir. 2011).

A § 2255 petition is not a substitute for appeal. *United States v. Wilson*, <u>997 F.2d 429, 431</u> (8th Cir. 1995).   A mere factual dispute that affects Guidelines calculations is not cognizable in a § 2255 petition.   *See Auman v. United States*, <u>67 F.3d 157, 161</u> (8th Cir. 1995) ("While section 2255 does provide relief for cases in which 'the sentence was in excess of the maximum authorized by law,' this provision applies to violations of statutes establishing maximum sentences, rather than garden-variety Sentencing Guideline application issues.").

The general rule is that Guideline issues may not be relitigated in a § 2255 petition.   However, there are three exceptions to that rule, none of which have

been met by Norris.   In *United States v. Perales*, 212 F.3d 1110 (8th Cir. 2000), the Eighth Circuit noted that there were three circumstances where a defendant might challenge Guidelines misapplication by the district court.   Those circumstances are: (1) where the defendant asserts that his attorney failed to object to the incorrect application of the Guidelines; (2) the sentence is in excess of the statutory maximum; and (3) where the sentence imposed was an error that amounts to a miscarriage of justice.   *Id*., at 1111.

Norris does not allege his attorneys were ineffective based on the claimed errors in the application of the guidelines to his case, as described above.   Norris fails to meet the conditions for relief under the first exception noted above.

The second exception is where the defendant contends that his sentence is above the maximum allowed for his crime.   Again, Norris has not raised this issue.   And since Norris was given a sentence of 235 months, less than the combined twenty-year maximum allowed under the statute for Counts I and II, each carrying individually a ten year maximum sentence, he cannot complain that his sentence of 120 months on Count I, and 115 months on Count II, to be served consecutively, for a total of 235 months, exceeded the statutory maximum.

The third exception is where the sentence imposed is a miscarriage of justice.   Norris has not raised this ground as an objection.   Furthermore, this

exception applies "only when petitioners have produced convincing new evidence of actual innocence (citations omitted) and the Supreme Court has not extended the exception to situations beyond those involving a petitioner's actual innocence." *United States v. Wiley*, 245 F.3d 750, 752 (8th Cir. 2001). Relief based on a miscarriage of justice is available only in the extraordinary case. *Id.* Norris has not raised, nor could he establish that his within guideline sentence is a miscarriage of justice.

These issues and for this additional reason, Norris' claims set forth in Grounds One, Two, Three, Seven, Nine and Ten, will be dismissed without an evidentiary hearing.

## C. NORRIS' CLAIM AS SET FORTH IN GROUND TEN THAT HIS SENTENCE WAS PROCEDURALLY UNSOUND AND SUBSTANTIVELY UNREASONABLE WAS CONSIDERED AND REJECTED BY THE EIGHTH CIRCUIT ON DIRECT APPEAL

In his brief on direct appeal, citing 18 U.S.C. § 3553(c)(1), Norris complained that this Court "committed procedural error by failing to adequately explain the chosen sentence within a guideline range that exceeded 24 months." (Norris Br., p. 10) Norris also complained that this Court imposed a substantively unreasonable sentence "because the district court failed to consider all factors required under the sentencing statute, failed to consider facts that should have gotten significant weight, and gave other factors more weight than

was proper." (Norris Br., p. 8 )   In an unpublished opinion, on February 2, 2018, the Eighth Circuit considered and rejected Norris' claims of error, and affirmed his top of the Guidelines sentence of 235 months.   *United States v. Norris*, 710 Fed. Appx. 282 (8th Cir. 2018) (per curiam) (unpublished).   Accordingly, and for this additional reason, Norris' claim set forth in Ground Ten, will be dismissed without an evidentiary hearing.

## D. NORRIS' COUNSEL WAS NOT INEFFECTIVE IN THAT NORRIS' COUNSEL PROVIDED MORE THAN ADEQUATE AND VERY EFFECTIVE REPRESENTATION DURING ALL STAGES OF NORRIS' CASE, INCLUDING DURING THE PRETRIAL STAGE OF THE PROCEEDINGS, PLEA NEGOTIATIONS, AND SENTENCING

Norris' counsel was not ineffective.   In Ground Four, Norris complains that he was denied effective assistance of counsel.   Because "the top of the 235 month uncontested guideline was not discussed with his personal counsel, but was promised by his counsel that he would not receive over 10 years for the charges. His counsel, Michael Skrine (sic), on the day of this guilty plea, told this to the defendant."   (2255 Motion p. 3).   In Ground Five, Norris alleges that after his personal counsel walked him through his guilty plea two weeks before sentencing, he "got a visit from Scott Tilsen, the Assistant Federal Public Defender, telling Norris that Michael Skrien had health issues and that Scott would be sitting in for him. So all previous promises from previous lawyer on day of plea went

unanswered, therefore resulting in a 235 month sentence instead of the 'not over 10 year sentence' Michael Skrine had told [Norris] he would receive."   Norris claims that had he "been aware of the 235 month uncontested open plea, he would not of plead guilty."   (sic) (2255 Motion p. 3)   In Ground Six, Norris alleges that "Public defender Scott Tilsen only had two weeks to prepare for the sentencing hearing which is not an effective amount of time for counsel to prepare and get all the facts ready in order to fight for a defendant."   (2255 Motion p. 3)

The record refutes Norris' claim that Mike Skrien told him he would not be sentenced to more than ten years.   This allegation is refuted by Norris' plea agreement, where Norris acknowledged that he agreed, "that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a)."   (Plea Ag. p. 2)   This Court asked Norris "Have any promises been made by anyone to get you to plead guilty other than the promises set out in this agreement?" (Plea Tr. 10)   Norris replied, "No, sir. No."   Relative to the application of the sentencing guidelines to his case, Norris acknowledged during the plea hearing that Mr. Skrien had explained the sentencing guidelines to him.   (Plea Tr. 11)

In addition, consistent with the plea agreement, this Court advised Norris that the sentencing guidelines were "simply guidelines.  And by that I mean I can impose a sentence against you that's above the guidelines or a sentence that's below the guidelines.  Understand that too?"  (Plea Tr. 12)        Norris responded, "Yes, sir, Your Honor, I do."  *Id.*   If Norris had been advised that he would not receive more than ten years imprisonment, he had many opportunities to say so at the plea hearing.  However, Norris acknowledged to the Court that he understood the Court could impose a sentence above the guidelines.

At the plea hearing, this Court explained to Norris that he could be sentenced to up to ten years on each count.  "For each of the two offenses the penalty is imprisonment of up to ten years, a fine of up to $250,000.00, or a combination of imprisonment and fine. And after you're release there would be a period of supervised release of up to three years.  Understand that?"  Norris replied, "Yes, Your Honor."   (Plea Tr. 12)   Later this Court summarized the discussion regarding Norris' potential sentence.  "So to recap this, on each of the two counts it could be up to ten years, that's the standard punishment.  But if it's determined that you're an armed career criminal it could be 15 to life.  Do you understand?"  (Plea Tr. 13)   Norris replied, "Yes, Your Honor."  *Id*.  The dialogue between this Court and Norris relative to the possible sentence that could

be imposed continued:

> THE COURT:   I'm going to consider the full range of
> punishment, whatever the range is, up to 10 or 15 or life, and the
> sentence will be in my discretion within the range of punishment.   Do
> you understand that too?
>
> THE DEFENDANT:   Yes, sir, Your Honor.
>
> THE COURT:   So with that in mind has anyone told you or
> promised you what sentence you'll receive in the case?
>
> THE DEFENDANT:   "No, sir, Your Honor."

(Plea Tr. 13-14)   Norris' claim that Mike Skrien told him he would not receive a sentence in excess of ten years, is directly contradicted in the record of his guilty plea proceeding by Norris' statement that no one had told him or promised him what sentence he would receive in the case.

In Grounds Four, Five, and Six, Norris makes general allegations of deficiencies on the part of his attorney, but fails to state exactly how any of his complaints affected his case.   Any claimed failure on the part of Norris' attorneys must be supported by factual allegations in Norris' § 2255 Petition, which he has failed to do.   In the absence of such specific allegations, Norris' claim for relief on Grounds Four, Five and Six, will be denied.  *United States v. Johnson*, 582 F.2d

1186, 1188 (8th Cir. 1978).

Norris' unsubstantiated claims will be disregarded.  His claims on these grounds have been refuted by the record.

Under *Strickland*, for Norris to be successful on his claims of ineffective assistance of counsel as alleged in Grounds Four, Five and Six, Norris must first show that his counsel's performance was deficient.    Norris has not shown that his counsel made any errors supporting his claims that his attorneys were ineffective because he received a total sentence of 235 months.    Norris fails to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."    *Strickland*, 466 U.S. at 687. Secondly, even if Norris established inadequate representation by his counsel in Grounds Four, Five and Six, Norris has failed to demonstrate that the alleged deficient performance prejudiced the defense so as "to deprive the defendant of a fair trial, a trial whose result is reliable."    *Id*.    Norris has failed to "show that there is a reasonable probability that, but for counsel's unprofessional errors," he would have received a lower sentence.    *Id*. at 694.    Norris completely fails to show how he was prejudiced by any claimed inadequacies by his counsel.    Norris does not, and cannot, establish that he would have received a lower sentence had his counsel had more time to prepare for his sentencing hearing.    Norris' within

guideline sentence is not the fault of his counsel.    Norris' sentence was based on the nature of his offenses, being a convicted felon in separate possession of two pistols, one of which he took from a deputy while assaulting and threatening the deputy's life, and the nature of his prior convictions.

In addition, there is no showing of prejudice because there is no reasonable probability that Norris' sentence would have been less than the total of 235 months imprisonment he received.    Norris' within-Guidelines sentence of 235 months appropriately held him accountable for the offenses of being a convicted felon in possession of a firearm, including aggravating factors under the Guidelines.    This was not a typical felon-in-possession case.    In addition to his criminal history, Norris assaulted, and threatened the life of Deputy Vance with the Deputy's pistol. Norris was responsible for a horrific, potentially very dangerous, if not deadly, set of circumstances.    (S.Tr., pp. 7-8)

Accordingly, Norris' claim for ineffective assistance of counsel as stated in Grounds Four, Five and Six, are devoid of merit, are refuted by the record, and will be denied.

## E. NORRIS' TWO CONVICTIONS FOR SEPARATELY POSSESSING TWO DIFFERENT FIREARMS WAS NOT A VIOLATION OF THE DOUBLE JEOPARDY CLAUSE IN THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION

In Ground Eight, Norris alleges that his conviction was obtained by a violation

of the protection against double jeopardy when his rights under the Constitution were violated twice for the same offense because Norris' claims that he was prosecuted for being in possession of two firearms separately when he possessed of both firearms at the same time. (2255 Motion p. 3)

> The Double Jeopardy Clause provides that no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb." We have long recognized that the Double Jeopardy Clause does not prohibit the imposition of all additional sanctions that could, " 'in common parlance,' " be described as punishment. *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 549, 63 S.Ct. 379, 387, 87 L.Ed. 443 (1943) (quoting *Moore v. Illinois,* 14 How. 13, 19, 14 L.Ed. 306 (1852)). The Clause protects only against the imposition of multiple *criminal* punishments for the same offense, *Helvering v. Mitchell,* 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938); see also *Hess, supra,* at 548–549, 63 S.Ct., at 386–387 ("Only" "criminal punishment" "subject[s] the defendant to 'jeopardy' within the constitutional mean-ing"); *Breed v. Jones,* 421 U.S. 519, 528, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346 (1975) ("In the constitutional sense, jeopardy describes the risk that is traditionally associated with a criminal prosecution"), and then only when such occurs in successive proceedings, see *Missouri v. Hunter,* 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983).

*Hudson v. United States*, 522 U.S. 93, 98–99, 118 S. Ct. 488, 493 (1997).

The Double Jeopardy Clause was not violated by Norris being convicted of, and then sentenced for, two separate offenses of being a convicted felon in possession of separate firearms at separate and distinct times.   Norris complained before sentencing that his two counts of being a convicted felon in possession of a firearm encompassed but a single offense, and that he, therefore, was subject to

only one statutory maximum punishment of ten years.   Central to Norris' claim is that he merges the possession of the pistol he had when he encountered Deputy Vance, with his separate, subsequent, and distinct possession of Deputy Vance's service pistol.   During a struggle, Norris forcibly took Deputy Vance's pistol from Deputy Vance, then put the pistol in Deputy Vance's face and stated "Stop or I'm going to shoot."   (Plea Ag. p. 4)   Norris claimed that he simultaneously possessed both firearms described in Counts I and II.   The facts, however, are otherwise.

Norris cited cases in his Objections to Presentence Investigation Report holding that the simultaneous possession of multiple firearms and ammunition creates one unit of prosecution.   In *United States v. Richardson*, <u>439 F.3d 421</u> (8th Cir. 2006), the Eighth Circuit held that "Congress intended the allowable unit of prosecution to be an incident of possession regardless of whether a defendant satisfied more than one § 922(g) classification, possessed more than one firearm, or possessed a firearm and ammunition."   *Id.* at 422.   That rule provides that a person accused of being a felon in possession of a firearm under § 922(g)(1), or a drug user in possession of a firearm under § 922(g)(3), or possessed a firearm in violation of any of the other subsections of § 922(g), should normally only be charged with one count of possession of the firearm involved, even though the defendant's status might qualify him for prosecution under alternative subsections.

The same is true for a defendant's simultaneous possession of multiple firearms and ammunition.    *Id.*

But the rule announced in *Richardson* does not apply when the firearms or ammunition are stored in separate locations or were obtained at different times. That rule was announced in *United States v. Woolsey*, <u>759 F.3d 905</u> (8th Cir. 2014):

> A felon's possession of both a firearm and ammunition comprises only one offense, "barring proof that the firearms were obtained at different times or stored separately." *Richardson,* 439 F.3d at 422; *see also United States v. Cunningham,* 145 F.3d 1385, 1398 (D.C.Cir.1998); *United States v. Hutching,* 75 F.3d 1453, 1460 (10th Cir.1996). Thus, where the prosecution seeks "more than one charge under section 922(g), separate acquisition and storage of the weapons is an element of the crimes charged." *Cunningham,* 145 F.3d at 1398. This element presents a question of fact to be submitted to the jury, "not a question of law for the court." *Id.* at 1399. The record here indicates that this element was never submitted to the jury.

*Woolsey*, <u>759 F.3d at 908</u>.    (emphasis supplied)

Norris' prior possession of the pistol charged in Count I of the Indictment is a separate and very different event than his foolhardy and potentially deadly decision to disarm Deputy Vance and then affirmatively use Deputy Vance's service pistol by pointing it at him and threatening to shoot him.    There is nothing simultaneous about Norris' separate and distinct possession of the pistol charged in Count I of the Indictment, and his subsequent taking, possessing, and using Deputy

Vance's pistol, the possession of which was charged in Count II of the Indictment.

As stated by the Eighth Circuit in *Woolsey*, "[t]he test is not whether there was any period of overlap, but whether the two items were separately acquired or stored." *Id*. at 908. When the crimes involve the defendant's possession of firearms that were acquired separately, it is proper that the Government charge the defendant's possession of each firearm separately. As Norris and Deputy Vance were fighting on the ground, Norris grabbed a pistol out of his right boot. Norris was charged in Count I with possession of that pistol. Deputy Vance knocked the pistol from Norris' hand and into the center of the road. At that point, Norris no longer had physical possession of that pistol. Later, during a struggle between them, Deputy Vance placed Norris in a headlock. Norris subsequently picked up an unknown object and hit Deputy Vance in the head with it. Norris was able to break Deputy Vance's hold and place him into a headlock. He struck Deputy Vance several times in the back of the head with his fist. Then, while Norris was on top of Deputy Vance, Norris forcibly took Deputy Vance's holstered service weapon, a Glock 22, .40 S & W caliber semi-automatic pistol, from Deputy Vance. Norris then tried to free the pistol from its holster. Norris then put the pistol in his (Deputy Vance's) face and stated, "Stop or I'm going to shoot." Deputy Vance knocked his pistol from Vance's hands and into the ditch.

The firearms charged in Counts I and II were separately acquired by Norris. Norris' separate, distinct and successive possession of Deputy Vance's pistol was properly charged as a separate offense in Count II of the Indictment.    Norris claim in Ground Seven that his sentence violated the Double Jeopardy Clause is without merit, and will be denied.

## **CONCLUSION**

For the foregoing reasons, this Court denies Norris' § 2255 petition without an evidentiary hearing.

**IT IS FURTHER ORDERED** this Court will not issue a certificate of appealability because Norris has not made a substantial showing of the denial of a federal constitutional right.

Dated this _15th_ day of November, 2019

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE